IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

VERNON B. DOWLING,                    )
                                      )
            Plaintiff,                )
v.                                    )        Civil Action No. 5:18-00055
                                      )
CENTRAL OFFICE, *et al.*,             )
                                      )
            Defendants.               )

PROPOSED FINDINGS AND RECOMMENDATION

On May 2, 2017, Plaintiff filed his Application to Proceed Without Prepayment of Fess

or Costs and a Complaint for alleged violations of his constitutional and civil rights pursuant to

Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct.

1999, 24 L.Ed.2d 619 (1971).[1] (Document Nos. 1 and 2.) Plaintiff names the following as

Defendants: (1) Central Office; (2) FBOP Director; (3) Mid-Atlantic Office Regional Director;

(4) Warden D.L. Young; (5) A. Warden Serrato; (6) A. Warden Birch; (7) DAP-C Jason Weaver;

(8) E. Stennet; (9) T. Milam; (10) C. Meadows; (11) J. Grimes; (12) J. Hill; (13) L. Flanagan;

(14) J. Davis; (15) (DTS) Robert Smith; (16) DTS Eric Woolwine; (17) William Carnell; (18) H.

James, Education Staff; (19) Taylor, Education Staff; (20) Toler, Education Staff; (21) Rayban,

Education Staff; (22) SIS Tech Toney; (23) SIS Tech Sweeney; (24) Frances F. Lilly, Health

Information Technologist; and (25) FBOP FCI Beckley. (Document No. 2.) In his Complaint,

Plaintiff alleges that Defendants have violated his constitutional rights. (Document Nos. 2 and

2-1.) First, Plaintiff alleges that the Central Office, FBOP Director, Mid-Atlantic Office

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a
less stringent standard than if they were prepared by a lawyer and therefore, they are construed

Regional Director, Warden Young, Warden Serrato, and Warden Birch have violated his constitutional rights by rendering the BOP's Administrative Remedy process unavailable or futile. (Document No. 2-1, pp. 1 – 2, 5.) Second, Plaintiff alleges that Defendants Toler, Taylor, James, Rayban, Toney, and Sweeney have retaliated against him for filing administrative remedies. (Id., pp. 6 and 8.) Third, Plaintiff alleges that Francis F. Lilly submitted unrequested and unrelated records in response to a subpoena filed in another civil action pending in the United States District Court for South Carolina. (Id., p. 4.) Plaintiff complains that Defendant Lilly's negligent act resulted in a breach of contract because his confidential records are publically viewable on Pacer. (Id.) Plaintiff further contends that the publication of his confidential records resulted in libel, slander, and invasion of privacy. (Id.) Fourth, Plaintiff alleges that DTS Robert Smith violated his duty to protect Plaintiff by his act of exposing Plaintiff as an informant. (Id., pp. 3.) Plaintiff alleges that the foregoing "ended in threats from inmates and hindered Plaintiff's confidence in Smith." (Id.) Fifth, Plaintiff alleges that he was "sexually assaulted" by Defendant Rayban. (Id., p. 5.) Plaintiff states that Defendant Rayban "sexually assaulted" him by asking Plaintiff the following questions: (1) Whether Plaintiff was gay; (2) Whether Plaintiff could tell how often Rayban worked-out; and (3) "Don't you think I'm good-looking?". (Id.) Sixth, Plaintiff alleges that Defendants Toler, Taylor, James and Rayban have denied him "adequate educational environment." (Id., p. 6.) Plaintiff states he was sentenced under Section 3553 and "he is entitled to rehabilitation and adequate educational environment." (Id.) Plaintiff complains that he is often tutored by a prisoner, who recently passed his GED and replaces the "often absent teacher." (Id.) Plaintiff alleges that even though

---

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

the prisoner employs a teacher, the teacher often leaves the room after a brief role call. (Id.) Plaintiff states that he should be educated by a trained teacher. (Id.) Seventh, Plaintiff complains that all named Defendants either chew or smoke tobacco outside the Units and "other compound routes Plaintiff must pass." (Id.) Plaintiff complains that he is forced to inhale second-hand smoke on a daily basis. (Id.) Plaintiff complains that Defendants should not expose Plaintiff to secondhand smoke because Defendants are responsible for Plaintiff's safety and health. (Id., 7.) Finally, Plaintiff claims that he is being denied access to the Courts. (Id.) Plaintiff explains that when to goes to the Center Office to review his legal mail, Defendant Hill "threatens Plaintiff with being sprayed and beaten if he keeps trying to file paperwork. (Id.) Plaintiff further alleges that Defendant Stennett has denied him access to his legal mail and documents. (Id.) As relief, Plaintiff requests monetary damages and an injunction. (Document No. 2, p. 5.)

As Exhibits, Plaintiff attaches the following: (1) An Affidavit from Inmates Dustin Raney, LaMichael Carter, and Justin Solan regarding retaliation by staff for the failing of administrative remedies (Document No. 2-2, pp. 1 – 2, 4 - 7.); (2) An Affidavit from Inmate Farris Dobbins stating that prison staff render the administrative remedy process unavailable (Id., p. 3.); (3) A copy of a "Rejection Notice" from the Administrative Remedy Coordinator at the Mid-Atlantic Regional Office dated December 21, 2017, concerning Remedy ID No. 925633-R1 (Document No. 2-3, p. 1.); (4) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated December 14, 2017, concerning Remedy ID No. 925633-R1 (Id., pp. 2 - 4.); (5) A copy of TRULINCS "Request to Staff" dated December 28, 2017, regarding his RDAP expulsion (Id., p. 5.); (6) A copy of TRULINCS "Request to Staff" dated December 30 and 31, 2017, requesting that video footage be preserved (Id., pp. 6 - 7.); (7) A copy of TRULINCS "Request to Staff"

dated January 9, 2018, complaining of improper processing of administrative remedies (Id., p. 8.); (8) A copy of TRULINCS "Request to Staff" dated January 10, 2018, complaining of retaliation and improper conduct by prison staff (Id., p. 9.); (10) A copy of a "BEC Inmate Bulletin" regarding Inmate Mail dated May 15, 2017 (Id., p. 10.); (11) A copy of TRULINCS "Request to Staff" dated January 13, 2018, complaining that A. Toler is filing "shots" against Plaintiff in retaliation for Plaintiff' filed a Tort Claim (Document No. 4.); and (12) Plaintiff's Affidavit (Document No. 8.)

On January 18, 2018, Plaintiff filed a Motion for Declaratory Action. (Document No. 7.) In his Motion, Plaintiff complains that prison staff are violating his right to send and receive mail. (Id.) Therefore, Plaintiff requests declaratory relief. (Id.)

## THE STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a person seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually

when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[2] The

_____

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court

United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

1.      **Administrative Remedy Process:**

In his Complaint, Plaintiff alleges that the Central Office, FBOP Director, Mid-Atlantic Office Regional Director, Warden Young, Warden Serrato, and Warden Birch have violated his constitutional rights by rendering the BOP's Administrative Remedy process unavailable or futile. (Document No. 2-1, pp. 1 – 2, 5.) Plaintiff further alleges that Defendants Toler, Taylor, James, Rayban, Hill, Toney, and Sweeney have retaliated against him for filing administrative remedies. (Id., pp. 6 and 8.)

Federal inmates have no constitutional right to participate in the BOP's administrative grievance proceedings. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1994); also see Booker v. South Carolina Dept. of

---

found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

Corrections, 855 F.3d 533 (4th Cir. 2017)("*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure."); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)("[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.") A BOP employee's refusal to respond to an inmate's administrative complaint, or conduct that otherwise prevents an inmate from pursuing such complaints through the administrative remedy process, making the process unavailable, is not actionable under Bivens. Rather, the legal consequence of conduct which makes the administrative remedy process unavailable to inmates is that the door to federal Court is open to proceedings on the merits of their claims without requiring their exhaustion of administrative remedies. Although an inmate does not have a constitutional entitlement to or a due process interest in accessing a grievance procedure, an inmate does have a First Amendment right to be free from retaliation when they do file a grievance. Booker, 855 F.3d at 542; also see Martin v. Duffy, 858 F.3d 239 (4th Cir. June 1, 2017)("this Court held that an inmate's 'right to file a prison grievance free from retaliation was clearly established under the First Amendment' at least as far back in time as 2010")(citing Booker, 855 F.3d at 545). Accordingly, the undersigned finds that Plaintiff's claim that the Central Office, FBOP Director, Mid-Atlantic Office Regional Director, Warden Young, Warden Serrato, and Warden Birch violated his constitutional rights by rendering the BOP's Administrative Remedy process

unavailable or futile should be dismissed. To the extent Plaintiff is alleging that Defendants Toler, Taylor, James, Rayban, Hill, Toney, and Sweeney have retaliated against him for filing administrative remedies, the undersigned finds that Plaintiff has stated a plausible claim and such should not be dismissed at this point in the proceedings.

## 2.    **Eighth Amendment**:

The undersigned views Plaintiff's Complaint as setting forth a claim under the Eighth Amendment. As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir.

1991) <u>cert. denied</u>, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" <u>Id.</u> at 298, 111 S.Ct. 2321 (citing <u>Rhodes v. Chapman</u>, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995)(quoting <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). <u>See also</u> <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.")

A.    *Verbal Abuse and Harassment.*

Plaintiff contends that Defendants Smith and Rayban violated his constitutional rights by subjecting him to verbal abuse or harassment. (Document No. 2-1.) As to Defendant Smith, Plaintiff alleges that Defendant Smith violated his duty to protect Plaintiff by exposing Plaintiff

9

as an informant. (Id., pp. 3.) Plaintiff states that the foregoing "ended in threats from inmates and hindered Plaintiff's confidence in Smith." (Id.)

Assuming Plaintiff's allegations as true, Plaintiff has failed to state a constitutional claim of failure to protect. In order to establish a claim of failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison officials acted with "'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834, 114 S.Ct. at 1977. First, Plaintiff fails to allege that he was incarcerated under conditions imposing a substantial risk of serious harm. Plaintiff does not claim that he was assaulted or that his life was threatened by other inmates because of Defendant Smith's statement. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each Defendant was consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that Defendant Smith knew of and disregarded an excessive risk to his health or safety. Furthermore, Plaintiff does not indicate that he suffered any serious injury as a result of Defendant Smith's alleged disclosure that Plaintiff was an informant. Plaintiff's claim that Defendant Smith should be liable due to the possibility that Defendant Smith's reference could have resulted in Plaintiff's life being threaten by other inmates is insufficient. See Henslee v. Lewis, 153 Fed. Appx. 178 (4th Cir. 2005)(Inmate did not state a cognizable claim under Section 1983 when he alleged that jail employee incited other inmates to attack him, but did not contend that any such attack occurred.); Langston v. Fleming, 38 F.3d 1213 (4th Cir. 1994)(unpublished opinion)(Prisoner failed to state a claim where he merely alleged that guards endangered his life by informing other inmates that he was charged with

rape).

As to Defendant Rayban, Plaintiff states that Defendant Rayban "sexually assaulted" him by asking Plaintiff the following questions: (1) Whether Plaintiff was gay; (2) Whether Plaintiff could tell how often Rayban worked-out; and (3) "Don't you think I'm good-looking?". (Document No. 2-1, p. 5.) First, the undersigned finds that the facts alleged by Plaintiff do support Plaintiff's conclusion that he was "sexually assaulted." There is no allegation that Defendant Rayban made any type of physical contact with Plaintiff.[3] At most, Plaintiff is alleging verbal harassment or sexual harassment. The verbal harassment or verbal abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Additionally, sexually harassment, absent contract or touching, is insufficient to state a constitutional claim. See Jackson v. Holley, 666 Fed.Appx. 242, 244 (4th Cir. 2016)(quoting Austin v. Terhune, 367 F.3d

---

[3] W.Va. Code § 61-8B-3 provides that a "person is guilty of sexual assault in the first degree when: (1) The person engages in sexual intercourse or sexual intrusion with another person and, in so doing: (i) Inflicts serious bodily injury upon anyone; or (ii) Employs a deadly weapon in the commission of the act; or (2) The person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is younger than twelve years old and is not married to that person." W.Va. Code § 61-8B-4 provides that a "person is guilty of sexual assault in the second degree when: (1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsions; or (2) Such person engages in sexual intercourse or sexual intrusion with

1167, 1171 (9th Cir. 2004)("[A]lthough prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessary extend to mere verbal sexual harassment"); Morales v. Mackalm, 278 F.2d 126, 132 (2nd Cir. 2002)(abrogated on other grounds)(allegations that a prison guard asked an inmate to have sex with her and to masturbate in front of her did not rise to the level of an Eighth Amendment violation); Barney v. Pulsipher, 143 F.3d 1299, 1311, n. 11 (10th Cir. 1986)(allegations that a jailer subjected females prisoners to severe verbal sexual harassment was not sufficient to state a claim under the Eighth Amendment); Howard v. Everett, 2000 WL 268493, * 1 (8th Cir. March 10, 2000)(sexual comments and gestures by prison guards did not constitute an Eighth Amendment violation); Murray v. United States Bureau of Prisons, 1997 WL 34677, * 3 (6th Cir. Jan. 28, 1997)(offensive remarks regarding a transsexual prisoner's body appearance and presumed sexual preference failed to state an Eighth Amendment claim); Wilder v. Payne, 2014 WL 6772265, *7-8(N.D.W.Va. Dec. 1, 2014)(finding that a prison guard's offensive and unprofessional sexual comments failed to state an Eighth Amendment claim). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim under the Eighth Amendment for which relief can be granted as to Defendants Smith and Rayban.

**B.    *Conditions of Confinement.***

Plaintiff contends that the conditions of his confinement are cruel and unusual based upon his exposure to secondhand smoke. (Document Nos. 2 and 2-1.) In Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), the Supreme Court held that an inmate

---

another person who is physically helpless."

"states a cause of action under the Eighth Amendment by alleging that ... [the prison officials] have, with deliberate indifference, exposed him to levels of ... [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health." Therefore, a plaintiff must satisfy a two-part inquiry that involves an objective and subjective component.

First, an inmate must prove objectively that he has been "exposed to unreasonably high levels" of environmental tobacco smoke. Id. at 35 - 36, 113 S.Ct. at 2475. In considering the first factor, the Court must inquire into the seriousness of the potential harm and the likelihood that environmental tobacco smoke will actually cause such harm. Id. The evaluation "requires more than statistical inquiring into the seriousness of the potential harm." Id. The Court must assess "whether society considers the risk . . . to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id. Relevant facts include whether the inmate remains housed in the environment, and whether the facility has enacted a formal smoking policy. Id.

Second, the inmate must show subjectively that prison authorities demonstrated a "deliberate indifference" to a risk of serious damage to his future health. Id. To establish the subjective component of deliberate indifference, an inmate must allege and prove each defendant's consciousness of the risk of harm to the inmate. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, an inmate must establish that the prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. The adoption of a smoking policy "will bear heavily on the inquiry into deliberate indifference." Id.

Furthermore, the mere imperfect enforcement of a non-smoking policy does not rise to the level of deliberate indifference. Scott v. District of Columbia, 139 F.3d 940, 944 (D.C.Cir. 1998)(stating that "it is hard to see how imperfect enforcement of a nonsmoking policy can, alone, satisfy *Hellings'* subjective element").

Liberally construing Plaintiff's Complaint and assuming all facts as true, Plaintiff's allegations do not establish an Eighth Amendment violation. Plaintiff alleges that all Defendants either chew or smoke tobacco outside the Units and "other compound routes Plaintiff must pass" on a daily basis. (Document No. 2-1, pp. 6 – 7.) Plaintiff concludes that Defendants have violated his constitutional rights because Defendants are responsible for Plaintiff's safety and health. (Id., 7.) The undersigned notes that Plaintiff fails to allege how Defendants' chewing of tobacco has jeopardized his health or safety. As to secondhand smoke, Plaintiff's allegations do not establish that he has been "exposed to unreasonably high levels" of secondhand tobacco smoke. Although Plaintiff alleges he is exposed to secondhand smoke on a daily basis, Plaintiff acknowledges that his exposure is limited to outside the Units and when traveling pass certain routes. There is allegation or indication that Plaintiff's limited exposure to secondhand smoke poses an unreasonable risk of serious damage to Plaintiff's future health. Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claim based upon exposure to secondhand smoke be dismissed.

**3.    Due Process Claims:**

The Fifth Amendment protects against deprivations of life, liberty, or property by the federal government. See U.S. Const. amend. V. In order to prevail on a due process claim, a plaintiff must show that the government has interfered with a protected liberty or property

interest and that the procedures that led to the deprivation were constitutionally sufficient. Thus, plaintiff must first demonstrate that he had a protected liberty interest. The fact of conviction and imprisonment implies the inmate's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, to establish a deprivation of a liberty interest with respect to RDAP, Plaintiff must show either (1) that he has a legitimate entitlement to admission in RDAP or in early release or (2) that the denial thereof creates an atypical and significant hardship on him in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 483-84, 115 S.Ct. at

15

2299-2300.

A.      *No Liberty Interest in RDAP Placement or to Early Release:*

Plaintiff appears to allege that his constitutional rights were violated when he was expelled from RDAP. (Document Nos. 2 and 2-1.) Federal prisoners have no constitutional or inherent right to participate in rehabilitative programs while incarcerated. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). Likewise, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7, 99 S.Ct. at 2104; see also, Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."). Title 18, U.S.C. § 3621(e), however, vests the BOP with broad discretionary authority to reduce, by up to one year, the sentence of a federal prisoner convicted of a nonviolent offense, upon the successful completion of a substance abuse treatment program. 18 U.S.C. § 3621(e); see also Lopez, 531 U.S. at 232, 121 S.Ct. at 718. The language of this statute which provides that a prisoner's sentence "may be reduced by the [BOP]," is clearly permissive; the statute does not *mandate* that the BOP reduce a prisoner's

sentence upon completion of the substance abuse treatment program.[4] See Lopez, 531 U.S. at 240, 121 S.Ct. at 721(Affirming that the BOP "may exclude inmates whether categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious." (Citations omitted.)); Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir. 1996)(Finding that 18 U.S.C. § 3621(e)(2)(B) "reflects unequivocal congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug-treatment program."). Thus, as to substance abuse treatment programs, the BOP has wide discretion in determining both whether an inmate enters such a program in the first instance and whether to grant or deny eligible inmates a sentence reduction under Section 3621(e). See Pelissero v. Thomas, 170 F.3d 442, 444 (4th Cir. 1999). Courts have consistently held that inmates who successfully complete substance abuse treatment programs do not have a liberty interest in the provisional early release date and suffer no deprivation of due process rights as a result of the rescission of their consideration for early release. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000)("The language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998).

   Plaintiff does not possess a constitutionally protected expectation interest in receiving a sentence reduction. Such a subjective expectation does not rise to the level of a constitutional

---

[4] It should be noted here that the BOP is required to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). This obligatory command, however, does not extend to the granting of the incentive-based reduction of a prisoner's sentence for the successful completion of the substance abuse program.

claim. See Mallette v. Arlington County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 635 (4th Cir. 1996)("[A] mere expectation of a benefit – even if that expectation is supported by consistent government practice – is not sufficient to create an interest protected by procedural due process. Instead, the statute at issue must create an entitlement to the benefit before procedural due process rights are triggered."). Neither Section 3621(e), the BOP's Program Statement (P.S. 5162.05), nor the Code of Federal Regulations (28 C.F.R. § 550.55), contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in early release.[5] See Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 1909-10, 104 L.Ed.2d 506 (1989)(Regulations must contain "explicitly mandatory language" to create a liberty interest.). Accordingly, Plaintiff does not possess a statutorily protected expectation interest in early release.

**B.    *No Liberty Interest in Educational Programs:***

To the extent Plaintiff alleges a liberty interest in participating in educational or vocational training during his imprisonment, the undersigned finds that Plaintiff's claim is without merit. Inmate have no constitutional right to education opportunities while incarcerated. Rhodes v. Chapman, 452 U.S. 337, 348, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981)(No Eighth Amendment right to classes); Women Prisoners of District of Columbia Dept. of Corr. v. District of Columbia, 93 F.3d 910, 927 (D.C. Cir. 1996)(inmates does not have a constitutional right to work or education opportunities); Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988)(finding no constitutional right to basic educational or vocational training programs); Hernandez v. Johnson,

---

[5] Even upon completion of RDAP, the statute governing the substance abuse treatment program gives discretion to the BOP to determine whether a prisoner should be granted *any* reduction in sentence. *See* 18 U.S.C. § 3621(e)(2)(B).

18

833 F.2d 1316 (9th Cir. 1987)(no due process right to classes); <u>Rivera v. Byars</u>, 2013 WL 4695637, * 5 (D.S.C. August 30, 2013)("The law is well settled . . . that an inmate has no constitutional right to participate in an educational or rehabilitative program."); <u>Quarles v. Dillman</u>, 2011 WL 1869961, * 2 (W.D. Va. May 16, 2011)("[I]nmates have no constitutional right to job or educational opportunities while incarcerated."); and <u>Gholson v. Murry</u>, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Furthermore, it is well established that an inmate has no absolute right to placement in a vocational training program. <u>See Zimmerman v. Tribble</u>, 226 F.3d 568, 571-72(7th Cir. 2000)(finding no liberty interest in attending educational or vocational classes to earn good conduct credit); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 531 (9th Cir. 1985)(finding no liberty or property interest in vocational training); <u>McNeal v. Mayberg</u>, 2008 WL 5114650 (E.D.Cal. Dec. 4, 2008)("Because Plaintiff has neither a liberty interest nor a property interest in vocational placement, Plaintiff was not entitled to any procedural due process protections in conjunction with her vocational training/placement opportunities, or lack thereof."); <u>Smith v. Michigan Dept. Of Corrections</u>, 2007 WL 1582223 (W.D.Mich. May 31, 2007)(finding that "prisoners have no recognized liberty or property interest in prison vocational or educational programs"). The denial of privileges are matters clearly contemplated by Plaintiff's original sentence. <u>See Gaston v. Taylor</u>, 946 F.2d 340, 343(4th Cir. 1991)(To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); <u>Hatch v.</u>

District of Columbia, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"). Accordingly, the undersigned finds that Plaintiff's claim that he has a liberty interest in being placed in an educational or vocational program is without merit.

**4.    Defendant Lilly:**

Finally, Plaintiff alleges that Francis F. Lilly submitted unrequested and unrelated records in response to a subpoena filed in another civil action pending in the United States District Court for South Carolina. (Document No. 2-1, p. 4.) Plaintiff complains that Defendant Lilly's negligent act resulted in a breach of contract because his confidential records are publically viewable on Pacer. (Id.) Plaintiff further contends that the publication of his confidential records resulted in libel, slander, and invasion of privacy. (Id.)

Plaintiff, however, fails to allege that Defendant Lilly's above act deprived him of a right protected by the Constitution. To the extent Plaintiff is claiming that Defendant Lilly defamed his character in violation of a federally protected right, his claim is without merit. See Siegert v. Gilley, 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991)("Defamation, by itself, is a tort actionable under the laws of most states, but not a constitutional deprivation."); Paul v. Davis, 424 U.S. 693, 712, 96 S.Ct. 1155, 1165 - 66, 47 L.Ed.2d 405 (1976)(finding that "any harm or injury to [Plaintiff's interest in his reputation], even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law"); Saunders v. Dickerson, 2008 WL 2543428 *2 (E.D.Va. Jun. 25, 2008)(stating that "[p]laintiff's reputation is protected through

20

state tort law, and a mere allegation of damage to one's reputation and character fails to implicate any liberty or property interests protected by the Constitution"); Sterne v. Thompson, 2005 WL 2563179 at *4 (E.D.Va.)("It is well established that a defamatory statement and a concomitant injury to reputation, by themselves, are insufficient to support a *Bivens* claim under the Fifth Amendment."); Miller v. Jack, 2007 WL 2050409 (N.D.W.Va. Jul. 12, 2007)(finding that "damages for defamation are not recoverable under § 1983 because a defamed person has not been deprived of any right, lineprivilege, or immunity secured to him by the Constitution or the laws of the United States"). To the extent Plaintiff alleges that Defendant Lilly violated his constitutional rights, the undersigned respectfully recommends that such a claim be dismissed.

Viewing Plaintiff's claims against the Defendant Lilly as constituting a breach of contract claim and a tort claim of libel, slander, or invasion of privacy under West Virginia law, the undersigned finds that District Court should decline to exercise supplemental jurisdiction over such claims. The District Court has supplemental jurisdiction over State law claims "that are so related to claims in the action within [the District Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[T]he federal claim must have sufficient substance to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative facts." United Mineworkers of America v. Gibbs, 383 U.S. 718, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)(Citation omitted.) Although the undersigned has determined Plaintiff sets forth plausible constitutional claims concerning retaliation, the right to receive mail, and denial of his right of access to court, Plaintiff's above State law claims do no derive from a common nucleus of operative facts as his constitutional claims. Accordingly, the

undersigned recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's above State law claims.

Based upon the foregoing, the undersigned finds that Plaintiff has failed to state a plausible claim against the following Defendants: (1) Central Office; (2) FBOP Director; (3) Mid-Atlantic Office Regional Director; (4) Warden D.L. Young; (5) A. Warden Serrato; (6) A. Warden Birch; (7) DAP-C Jason Weaver; (8) T. Milam; (9) C. Meadows; (10) J. Grimes; (11) L. Flanagan; (12) J. Davis; (13) (DTS) Robert Smith; (14) DTS Eric Woolwine; (15) William Carnell; (16) Frances F. Lilly, Health Information Technologist; and (17) FBOP FCI Beckley. Accordingly, the undersigned respectfully recommends that the foregoing Defendants be dismissed.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Plaintiff's Complaint as to the following: (1) Claim of a denial of the right to participate in the BOP's administrative remedy process; (2) Claim of verbal abuse and harassment in violation of the Eighth Amendment; (3) Claim of exposure to secondhand smoke in violation of the Eighth Amendment; (4) Claim of expulsion from RDAP in violation of the Due Process Clause; (5) Claim of denial of educational programs in violation of the Due Process Clause; and (5) Claim of improper disclosure of "confidential records;" and **REFER** this matter back to the undersigned for further proceedings on Plaintiff's claims of retaliation, right to access to the court, and right to send/receive mail.[6]

---

[6] By separate Order entered this day, the undersigned has granted Plaintiff's Motion to Proceed Without Prepayment of Fee as to the following claims: (1) Defendants Toler, Taylor, James,

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 19, 2018.

Omar J. Aboulhosn
United States Magistrate Judge

---

Rayban, Hill, Toney, and Sweeney violated Plaintiff's First Amendment right to be free from retaliation; (2) Defendant Hill violated Plaintiff's right to send and receive mail under the First Amendment and the Due Process Clause of the Fifth Amendment; and (3) Defendants Hill and Stennett violated Plaintiff's right to access to the court under the First Amendment and Due Process Clause of the Fifth Amendment.